UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAYLA MARIE LOCKWOOD,

Plaintiff,

v.

CAROLYN W. COLVIN,

Defendant.

Case No.   12-cv-00493-NJV

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND REMANDING CASE**

Re: Dkt. Nos. 19, 22

## INTRODUCTION

Kayla Lockwood seeks judicial review of an administrative law judge decision denying her further Supplemental Security Income (Title XVI) benefits.  Doc. No. 19.  Lockwood's request for review of the administrative law judge's decision was denied by the Appeals Council.  *See* Administrative Record ("AR") 6-9.  The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Both parties have consented to the jurisdiction of a magistrate judge.  Doc. Nos. 4 & 5.  The court therefore may review the parties' cross-motions for summary judgment.  For the reasons stated below, the court will grant Lockwood's motion for summary judgment, deny Defendant's motion for summary judgment, and remand the case for further proceedings consistent with this order.

## BACKGROUND

A.    **Procedural History.**

The Social Security Administration (the "SSA") found Lockwood disabled as of April 1, 2001, due to a history of bipolar disorder and post-traumatic stress disorder.  AR 27, 40.  She was 13 years old.  Specifically, the SSA found that Lockwood's symptoms met the mental disorder(s) described in Childhood Listing 112.04 (Mood Disorders) and awarded Lockwood Supplemental

United States District Court
Northern District of California

Security Income ("SSI") benefits.  AR 17, 40.  By law, the SSA was required to re-determine Lockwood's eligibility for SSI benefits under the adult rules when Lockwood became 18 years old.  AR 17, 28.  To make that determination, the SSA needed current medical evidence and therefore attempted to schedule a consultative mental health evaluation for Lockwood.  AR 28.  The SSA sent two notices to Lockwood, and although Lockwood acknowledged receiving at least one of the notices, she never scheduled the examination.  *Id.*; *see also* AR 144-158.  Because the SSA had "insufficient evidence to determine the continuing severity of [Lockwood's] conditions under the adult rules," in April 2007 it "cease[d] her benefits for insufficient evidence and failure to cooperate."  *Id.*

Lockwood sought reconsideration of the cessation of benefits.  In May 2009, Lockwood attended a hearing before a disability hearing officer, who again concluded that there was insufficient medical evidence with which to find that Lockwood was disabled.  AR 37-45.

Lockwood then requested a hearing before an administrative law judge ("ALJ") and appeared for that hearing on March 31, 2010.  AR 476-522.  The ALJ found that although Lockwood suffered from severe impairments, she would not be disabled if she discontinued her use of marijuana, and therefore was not eligible for SSI benefits.  AR 14-25.  The Appeals Council denied Lockwood's request for review without comment.  AR 6-8.  Lockwood thereafter filed the instant action.

**B.   Medical History.**

Lockwood was born in 1988, and was physically and sexually abused throughout her childhood.  AR 500-502.  The earliest medical records in the AR establish that she was diagnosed by her treating physician, Dr. Robert Soper, with Major Depression, Dissociative Disorder and Borderline Traits as early as 2001.  AR 383-386.

In 2003, Lockwood began outpatient mental health treatment for her depression.  AR 395.  At intake, a social worker diagnosed Lockwood with Bipolar Affective Disorder and PTSD.  AR 398.  Her global assessment of functioning ("GAF")[1] score was 35.  AR 396.  Lockwood

_____

[1] "The GAF is a numeric scale ranging from zero to one hundred, which is used to rate social, occupational and psychological functioning 'on a hypothetical continuum of mental health-

*United States District Court*
*Northern District of California*

voluntarily entered a day treatment program in early 2004. AR 404, 408. At intake, another social worker diagnosed Lockwood with Major Depressive Disorder and Anxiety Disorder. AR 408-409. Her GAF (indicated as "Axis V") was noted to be 40 currently, with 45 as her highest. AR 409. She was discharged on February 25, 2004. AR 417. At a scheduled follow-up appointment, Lockwood was diagnosed by Dr. Christopher Lang as having Bipolar Affective Disorder and PTSD. AR 418. At that time, she was taking Lithium to stabilize her mood. *Id*. Lang observed that Lockwood experienced "a high degree of interpersonal sensitivity to feeling that adults in her immediate environment are treating other age peers differently than they are treating [her]." AR 419. Lockwood was prescribed Prozac in May 2004. AR 422.

On November 24, 2004, Lockwood stopped using methamphetamines when she discovered she was pregnant. AR 288.

In 2005, Lockwood ceased taking Lithium and Prozac because of concerns about her pregnancy. Lockwood also for the first time revealed to Dr. Lang that she had been using methamphetamines regularly before her pregnancy. AR 429. Dr. Lang noted that "[t]he mood instability that was attributed to Bipolar Disorder now appears much more likely to correlate with the substance abuse, although the family history is strong for bipolar disorder and the Lithium appeared to be significantly helpful with mood stability." AR 429; *see also* 430-432 (Lockwood ceased taking crystal meth upon discovering pregnancy, but continued using marijuana "on a daily basis"). Based on Lockwood's methamphetamine use, Dr. Lang revised Lockwood's diagnosis to "Major Depression, recurrent, severe, with psychotic features" and PTSD; he ruled out the bipolar disorder diagnosis. AR 432.

In May 2005, Dr. Anna Williams diagnosed Lockwood with Major Depressive Disorder and PTSD. AR 438. She prescribed Zoloft and recommended psychotherapy. *Id*. Lockwood's GAF was 55. *Id*. She represented to Dr. Williams that she had been sober for 6 months. *Id*.

---

illness.' *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. Am. Psychiatric Ass'n. 1994) ('DSM-IV'). The DSM-IV states that Axis V . . . is 'for reporting the clinician's judgment of the individual's overall level of functioning.'" *Nguyen v. Astrue*, 179 Soc. Sec. Rep. Serv. 198, *61 (N.D. Cal. 2012). A GAF of 50 "reflects a serious limitation on a claimant's ability to perform basic life tasks." *Id*. Limitations increase as the GAF score decreases.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        In July 2006, Lockwood reported that she had not used any substance for two years.  AR 443.  (This conflicts with her prior report that she had used methamphetamines until November 2004.  AR 428.)  She was taking Zoloft for her depression and identified residual mood-related symptoms, but Dr. Lang felt she was competent to manage her own funds based on his interview.  AR 443.

        October 2007, Lockwood was involuntarily committed for psychiatric treatment after reporting that she was hearing voices, and threatening to harm herself and others.  AR 444, 447.  At intake, Dr. Rebecca Danforth diagnosed Lockwood with "Schizoaffective Disorder, Bipolar Type;" PTSD; and cannabis dependence; Lockwood's GAF was 30.  AR 454.  Upon discharge four days later, Dr. Jennifer Star diagnosed Lockwood with "Bipolar Affective Disorder, Most Recent Episode Mixed;" marijuana dependence; and PTSD.  AR 449.  Her GAF upon discharge was 50.  AR 450.

        In connection with Lockwood's request for reconsideration of the SSA's denial of benefits, a medical consultant completed a Psychiatric Review of Lockwood based on her medical records alone.  *See* AR 249-259.  In his Medical Summary, Dr. Harrison indicated that an RFC assessment was necessary in connection with Listing 12.04 (Affective Disorders).  AR 249, 251.  Dr. Harrison did not indicate whether Lockwood met or equaled any of the other listings implicated by the diagnoses Lockwood's physicians had made in the past, such as 12.03 (Schizophrenic, Paranoid and other Psychotic Disorders), 12.06 (Anxiety-related Disorders), 12.08 (Personality Disorders), or 12.09 (Substance Addiction Disorders).  Dr. Harrison's report does not refer to Lockwood's substance abuse in any manner.  He indicates that Lockwood would have mild restriction of her activities of daily living; mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  AR 257.  He identified no episodes of decompensation of extended duration.  *Id*.  The report was signed on February 3, 2009.  AR 249.

        On May 5, 2009, Lockwood testified during her disability hearing that she used marijuana regularly.  AR 38.

        In July 2009, Lockwood visited the ER for anxiety.  AR 361-62.  She denied having

United States District Court
Northern District of California

hallucination or homicidal ideations; she admitted having suicidal thoughts but denied having a plan. AR 361. At that time, she denied using street drugs, but her urine tested positive for cannabinoids. AR 361-62. The physician's impression was "acute anxiety," and Lockwood was released with anti-anxiety medication after meeting with a county mental health worker. AR 362. On a follow-up visit to the Del Norte Mental Health Clinic, social worker Celia Perez added "Toxic Effects of Narcotics" to Lockwood's diagnosis form. AR 299. She noted that Lockwood's GAF was 45. AR 300.

In August 2009, Carol Kays, a social worker at the Del Norte Mental Health Clinic, recorded a prior diagnosis of bipolar disorder and added "Acute Stress Disorder" and "Personality Disorder" to Lockwood's diagnosis form. AR 460. Lockwood's GAF at the time was 45. AR 461.

In March 2010, Lockwood saw Dr. Christian Holland at the Del Norte Community Health Clinic for the first time. Dr. Holland diagnosed Lockwood with Manic Depression. AR 464.

On February 5, 2011, Lockwood attended a comprehensive psychiatric evaluation conducted by Dr. Paul Butler. AR 467-471.[2] After reviewing her records and examining her, Dr. Butler diagnosed Lockwood as suffering from Bipolar Disorder and PTSD. AR 470. Her GAF was 50. *Id.* She denied using any illicit drugs at that time. AR 469. Dr. Butler opined that Lockwood was "likely to experience problems performing both simple, as well as complex tasks[. . . ;] has problems with authority [and] is likely to need special assistance in order to perform work on a consistent basis." AR 470.

**C.      Lockwood's Testimony Before The ALJ.**

Lockwood testified that she was repeatedly raped and molested by her step-father and by her father's friends from the time she was three years old until she was nine years old. AR 500-501. She testified that she received court-ordered therapy from the time she was five until she was nine years old. AR 501. She continued receiving treatment afterwards and has "always been

---

[2] This examination took place after the ALJ issued his decision. Because it was presented to the Appeals Council, however, it is part of the AR and may be considered by this court on appeal. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

United States District Court
Northern District of California

1    going to the therapist" for PTSD.  AR 501.

2          After her second pregnancy, a doctor told Lockwood that she suffered from post-partum

3    depression.  AR 493-94.  She was having good days and down days, and on her down days could

4    not get up.  AR 505.  In October 2007, Lockwood was "hearing voices.  I [] was having a lot of

5    problems mentally.  Like I couldn't be stable around my children.  I was crying all the time. . .  I

6    just felt suicidal, I guess, like I wasn't worth anything.  And I was hearing voices telling me the

7    same thing, that I'm nothing.  So I went to the doctor's to try to get help, and that's when they had

8    stripped my rights at the doctor's office and put me in the mental ward."  AR 491; *see also id*. at

9    503 (Lockwood was committed "because I threatened to kill everybody in the clinic and myself").

10         She was taken by the police to the hospital in July 2009 after cutting her arm and was put

11   on suicide watch there.  AR 499.  Lockwood explains that she cuts herself every six months,

12   sometimes deeply, sometimes not, to "release my pain, not to kill myself."  AR 502

13         Lockwood also testified about her social limitations.  Lockwood shops for groceries at

14   night because she tries to avoid people; she bags the groceries while her boyfriend pays and talks

15   to the cashier.  AR 487.  Lockwood is not comfortable around doctors and teachers "because I feel

16   they all dislike me."  AR 509.  Her boyfriend has to "do all the talking for me, because I really

17   don't know if I would be able to hold my tongue against somebody that I think is thinking bad

18   about me, or talking behind my back."  AR 509.  She does not go anywhere if her boyfriend

19   cannot come with her, and walks away from people if her boyfriend is not there.  AR 510 ("I'm

20   really afraid of them looking at me the wrong way, and getting into a fight with them, because it's

21   happened before").

22         She does not attend church or community events.  AR 495.  On her down days, her

23   boyfriend helps take care of their children; she could not manage to do so by herself.  AR 505.

24         Her paid work history is limited to one job: in 2009, she worked for her grandmother for

25   half an hour a day for approximately four months as a home health aide, but got into a fight with

26   her grandmother when she complained that Lockwood was late, unreliable, and did not do her job

27   properly.   AR 482-483.

28         Lockwood cannot volunteer at her daughter's school because she believes "other parents

6

look at me funny, I just think like they're thinking about me, and like why [can't they] say it to my face if they're thinking something.  And the teachers . . . they seem just really rude to me.  Like . . . they don't like me."  AR 509; *see also* AR 38 (Disability Hearing Officer's summary of Lockwood's testimony in May 5, 2009) ("She has never looked for work because she does not feel comfortable dealing with others.  She volunteered at her daughter's pre-school 3 times but reports she got into a fight with her daughter's teacher because the teacher asked her to sweep the floor and she and the teacher could not get along").

While Lockwood has admitted to consuming methamphetamines in the past, she stopped in November 2004 when she discovered her first pregnancy.  AR 288, 497.  In March 2010, Lockwood testified that she was a daily marijuana smoker and was saving money to obtain her medical marijuana card.  AR 497.  At the time she was hospitalized in 2007, she was using marijuana but no other illegal drugs.  AR 497-98.  She testified that the marijuana calmed the voices in her head.  AR 513.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error.  *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997).  "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

United States District Court
Northern District of California

# DISCUSSION

### A.   The Five Step Sequential Analysis For Determining Disability.

The Social Security Regulations set out a five-step sequential analysis for evaluating a claimant's application for SSI disability. *See* 20 C.F.R. § 416.920(a)(4); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). In the first step, the ALJ must determine whether the claimant is currently engaged in substantially gainful activity. 20 C.F.R. § 416.920(a)(4)(i). (This step is not used for redeterminations of entitlement to benefits when a claimant turns 18 years old.) If the claimant is not so engaged, the second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the ALJ concludes that the claimant does not have a "severe" impairment, the claimant is not "disabled" and her claim is denied. *Id*. If the claimant does have a "severe" impairment, the third step requires the ALJ to determine whether the impairment meets or equals the criteria of an impairment listed in the relevant regulation. 20 C.F.R. § 404, Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii). In the fourth step, the Commissioner must determine whether the claimant has sufficient residual functional capacity to perform her past work. 20 C.F.R § 416.920(a)(4)(iv). If so, the claimant is not "disabled" and the claim must be denied. *Id*. If the claimant proves that she cannot perform past work, the burden shifts to the commissioner in the fifth step of the analysis to establish that the claimant can perform other substantial gainful work. 20 C.F.R. § 416.920(a)(4)(v). If the Commissioner fails to meet this burden, the claimant must be found disabled. *Id*. If a claimant is found to be "disabled" or "not disabled" at any of these steps, the ALJ need not consider the remaining steps. 20 C.F.R. § 416.920(a)(4).

### B.   Lockwood's Arguments On Appeal To This Court.

Lockwood asks the court to remand the case for further proceedings on four grounds. Doc. No. 19. She argues that the ALJ failed to develop the record adequately and should have requested additional medical opinions. She argues that the ALJ failed to evaluate her severe impairments properly. She argues that the ALJ failed to properly evaluate the impact of her substance abuse on her disability. Finally, she argues that new evidence demonstrating the

1    severity of her impairments should be taken into consideration by the ALJ.

2         The ALJ evaluated Lockwood's application for benefits under the required sequential

3    evaluation.  *See* AR 16-23.  (As noted above, because this was a redetermination of benefits at age

4    18, the first step is inapplicable.  AR 18.)  The court addresses the ALJ's decision only to the

5    extent it is challenged by Lockwood on appeal.

6    **C.       The ALJ Erred In Failing To Evaluate The Severity Of All Of Lockwood's**

7    **Impairments.**

8         At Step Two, the claimant bears the burden of showing that she has a medically severe

9    impairment or combination of impairments.  20 C.F.R. § 416.920(c).  A "severe" impairment is

10   one defined as significantly limiting physical or mental ability to do basic work activity.  *Id.*  In

11   determining whether a claimant has a severe impairment the ALJ must evaluate all of the medical

12   opinions in the AR, and explain the weight given to each opinion.  20 C.F.R. § 416.927(b) ("[W]e

13   will always consider the medical opinions in your case record together with the rest of the relevant

14   evidence we receive"), (c) ("Regardless of its source, we will evaluate every medical opinion we

15   receive").  An ALJ may not circumvent this requirement simply by ignoring opinions in the

16   record.  *Lingenfelter v. Astrue*, 504 F. 3d 1028, 1038 n. 10 (9th Cir. 2007) ("Of course, an ALJ

17   cannot avoid these requirements simply by not mentioning the treating physician's opinion and

18   making findings contrary to it").

19        Here, the ALJ concluded that Lockwood has four severe impairments: polysubstance

20   abuse, bipolar disorder, major depressive disorder, and PTSD.[3]  AR 19.  As described above,

21   many of Lockwood's treating physicians diagnosed her with these impairments, but they also

22   diagnosed her as suffering from anxiety disorder, personality disorder, borderline traits, manic

23   depression, acute stress disorder, and dissociative disorder.  *See*, *e.g.*, AR 207, 220-22, 225, 231,

24   234, 237, 240, 264, 308, 318, 339, 362, 409, 432, 438, 454, 460.  While the ALJ referenced

25   various diagnoses of anxiety disorder, borderline traits, panic attacks and dissociative disorder, he

26

27        [3] The ALJ also concluded that Lockwood's seizures and pain symptoms were not

28   corroborated by the record, and that the record contains evidence that Lockwood was medication
     seeking.  *See* AR 19-20.  Lockwood does not challenge these findings on appeal.

United States District Court
Northern District of California

9

did not evaluate whether they were severe.  AR 19.  The ALJ erred in failing to evaluate the

myriad medical opinions that supported the existence (and severity) of Lockwood's other

impairments.  *See* 20 C.F.R. § 416.927(b), (c); *see also Ingram v. Barnhart*, 72 Fed. App'x 631,

635 (9th Cir. 2003) (as the ALJ did not identify plaintiff's dysthymia or panic disorder as severe

impairments, he necessarily did not fully consider the effects of the combination of plaintiff's

severe impairments.)

To the extent the ALJ's failure to address these impairments can be interpreted as a

conclusion that these impairments are not severe, the ALJ failed to offer any reasons to the

treaters' conclusions that Lockwood suffered from these conditions, or to explain why the

conditions were not severe.  A treating physician's opinion is given special weight because she is

employed to cure and has a greater opportunity to observe the claimant's physical condition.  *Fair*

*v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

1983).  If a treating physician's opinions are not contradicted, they can be rejected only with "clear

and convincing" reasons.  *Lester*, 81 F.3d at 830.  If the treater's opinions are contradicted, the

ALJ may reject the opinions if he states specific, legitimate reasons that are supported by

substantial evidence.  *Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605.  Whether the ALJ ignored or

implicitly rejected the treaters' opinions regarding Lockwood's documented impairments, he did

not articulate his reasoning under the relevant standard, supported by substantial evidence, for

doing so.  Either way, this was error.  *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)

("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of

impairments only when his conclusion is clearly established by medical evidence" (citing S.S.R.

85-28)); *Flaten*, 44 F.3d at 1463; *Lester*, 81 F.3d at 830.

Defendant contends that the court should affirm the ALJ decision because Lockwood

"does not explain how her other alleged mental impairments would limit her more than the ALJ

found."  Doc. No. 22 at 4.  According to Defendant, the ALJ's failure to evaluate each severe

impairment was not prejudicial because "the ALJ had to consider the functional effect of all her

impairments, severe and non-severe" when assessing her residual functional capacity ("RFC").

Doc. No. 22 at 4.  The ALJ did examine some evidence pertaining to Lockwood's other mental

1   impairments when assessing her RFC.  *See* AR 22-23.  The ALJ's omission nonetheless

2   constitutes error.  First, the ALJ's failure to evaluate each of Lockwood's impairments violated

3   Social Security regulations.  *See* 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in

4   your case record when we make a determination or decision whether you are disabled"); *see also*

5   *id*. § 416.920a(b) ("[W]e must first evaluate your pertinent symptoms, signs, and laboratory

6   findings to determine whether you have a medically determinable mental impairment(s). . . . If we

7   determine that you have a medically determinable mental impairment(s), we must specify the

8   symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and

9   document our findings . . .").  Second, the ALJ did not take into consideration each of Lockwood's

10  impairments (alone or in combination) at Step Three of the sequential analysis.[4]  For example, the

United States District Court
Northern District of California

---

12      [4] At Step Three, the ALJ compares the claimant's impairments to the criteria for various impairments listed in the Code of Federal Regulations ("listed impairments" or "listing").  *See* 20

13  C.F.R. §§ 416.920(a)(4)(iii), (d); 416.925; 416.926.  If the claimant shows her impairments, or combination of impairments, meet or equal the criteria in any listing(s), a disability is presumed and benefits are awarded.  *Id*. § 416.920(d).  If the claimant is unsuccessful, the ALJ assesses the

14  claimant's residual functional capacity ("RFC") and proceeds to Step Four.  *Id*. § 416.920(e).

15      The ALJ analyzed whether Lockwood, as an adult, met the criteria for adult listings 12.04 (Affective Disorders) and 12.09 (Substance Disorders).  Listing 12.04 is the adult equivalent of the

16  listing for which the SSA had awarded Lockwood benefits as a child (112.04).  However, the ALJ did not evaluate whether Lockwood's combination of impairments met or equaled any other listed impairments.  For example, the ALJ failed to explain why he excluded Lockwood's PTSD (which

17  he had concluded was a severe impairment at Step Two) and her other anxiety-related disorders from the analysis when determining whether these impairments, or combination of impairments,

18  met or equaled another listing, such as 12.06 (Anxiety Disorders).  *See* AR 19-21.  This constitutes a separate, harmful, error.  *See* 20 C.F.R. § 416.920(d)(2); *see also Keyser v. Comm'r Soc. Sec.*

19  *Admin*., 648 F.3d 721, 727 (9th Cir. 2011) ("If your impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder") (citing 20 C.F.R.

20  § 404.1520a(d)(2), the Social Security Disability equivalent of § 416.920a(d)(2)).  Where the ALJ has found a severe medically determinable impairment at Step Two of the sequential analysis, "all

21  medically determinable impairments must be considered in the remaining steps of the sequential analysis."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "In determining whether a claimant

22  equals a listing under step three … the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."  *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th

23  Cir. 2003) (given the potential effect of obesity on the plaintiff's other impairments, the ALJ had a responsibility to consider their interactive effect in determining whether she met or equaled a

24  listing even though she did not meet the listed criteria for obesity).

25      To the extent that the ALJ determined that Lockwood's PTSD and other anxiety disorders did not meet or equal the criteria for any listings, such as listing 12.06 (Anxiety Disorders), he

26  once again did not provide any support for rejecting the opinions of Lockwood's treaters.  To the extent he relied on the Psychiatric Review Technique ("PRT") Form Dr. Harrison completed,

27  which did not analyze whether Lockwood met the criteria for Listing 12.06, as a basis for concluding that Lockwood's impairments did not meet or equal the criteria for listing 12.06, the

28  ALJ also erred.  *See Keyser*, 648 F.3d at 726 (finding legal error where "the written decision did not document the ALJ's application of the [PRT], did not include a specific finding as to the

11

1    AR is replete with references to Lockwood's PTSD and other anxiety-related diagnoses, but the

2    ALJ did not analyze whether Lockwood's impairments met Listing 12.06 (Anxiety-related

3    disorders); *cf*. AR 147-149 (October 2007 SSA consultant's analysis of Lockwood's impairments

4    under Listings 12.04 and 12.06).  Finally, and as discussed in Section D below, the ALJ failed to

5    take into consideration each of Lockwood's impairments when analyzing whether Lockwood's

6    drug addiction materially contributes to her disability.  The ALJ's failure to fully analyze

7    Lockwood's severe impairments at Step Two compromised the remaining steps of the sequential

8    analysis, and constitutes harmful error.

9        **D.       The ALJ Erred In Assessing The Impact Of Lockwood's Drug Use On Her**

10       **Disability.**

11            Since this case involves drug abuse and the ALJ found that Lockwood met a listed

12   impairment, the ALJ was required to conduct a drug addiction and alcoholism analysis to

13   determine whether the substance abuse is a contributing factor material to Lockwood's disability.

14   *See* 20 C.F.R. § 416.935(a).  In conducting this analysis, an administrative law judge must

15   evaluate which impairments would remain if the claimant stopped abusing substances.  20 C.F.R.

16   § 416.935(b).  If the remaining limitations would still be disabling, then the claimant's substance

17   abuse is not a material contributing factor.  20 C.F.R. § 416.935(b)(2)(ii).  Conversely, if the

18   remaining limitations would not be disabling, then the substance abuse is material and benefits

19   must be denied.  20 C.F.R. § 416.935(b)(2)(i).

20            The ALJ's failure to consider "each of every impairment" in Lockwood's case was error.

21   The Ninth Circuit has emphasized that,

22   _____

23   degree of limitation in any of the four functional areas[, and] simply referenced and adopted the
     [PRT Form] completed earlier by [another physician]").  Setting aside the fact that Dr. Harrison's
24   report only "addresses" listing 12.06 through omission, Dr. Harrison's opinion is based on a
     review of the record only, and is not supported by independent clinical findings in the record.  The
25   report of a non-examining physician cannot by itself constitute substantial evidence that justifies
     rejection of the opinion of either an examining physician or a treating physician.  *Lester*, 81 F.3d
26   at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990)); *see also Tonapetyan v.
     Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001).
27            It is unclear whether Lockwood raises this issue as a ground for remanding the case in her
     motion for summary judgment, or is basing her argument solely on a Step Two error by the ALJ.
28   *See* Doc. No. 19 at 7-9.  In any event, because the court is remanding on other grounds, the ALJ
     will also need to address this error on remand.

United States District Court
Northern District of California

1

2
   [i]n drug and alcohol addiction cases, the question is whether the claimant would be still disabled if not dependent on drugs or alcohol. Thus, each and every impairment must be considered to determine if the combination of the remaining impairments is severe. If a severe impairment is omitted at step two, it is impossible to perform the proper analysis for differentiating the effects of [drug and alcohol abuse] from the effects of a claimant's other impairments.  As the ALJ did not identify [claimant's] dysthymia or panic disorder as severe impairments, he necessarily did not fully consider the effects of the combination of [claimant's] severe impairments.

3

4

5

6
         *   *   *

7
   Error in identifying a claimant's severe impairments necessarily corrupts the differentiating analysis because the Commissioner cannot consider whether each of the claimant's severe impairments would persist if she stopped using drugs or alcohol.

8

9

10
*Ingram*, 72 Fed. App'x at 635-36; *see also Black v. Astrue*, 472 Fed. App'x 491, 492 (9th Cir.

11
2012) (the ALJ erred at Step Two by not considering whether plaintiff's anxiety disorder was a

12
severe impairment when his treating physician diagnosed plaintiff as suffering from anxiety

13
disorders and plaintiff alleged she was disabled in part due to anxiety disorder).  The medical

14
opinions from Lockwood's treating sources diagnosing her generalized and acute anxiety, PTSD,

15
panic attacks, and anxiety disorder were un-contradicted, and the record supports a finding that

16
these conditions had more than a minimal effect on her ability to work.  The ALJ erred by not

17
considering whether Lockwood's anxiety-related disorders would have persisted if Lockwood had

18
ceased her marijuana use.  *See Ingram*, 72 Fed. App'x at 635.

19
   In addition, the ALJ's conclusion that Lockwood would not be disabled if she stopped

20
using marijuana is not supported by substantial evidence.  As an initial matter, the ALJ does not

21
identify what evidence he relied upon in conducting the drug abuse analysis.  *See* AR 21.  Without

22
citation to the record, he conclusorily states that Lockwood's limitations would not meet or

23
medically equal the criteria of any listed impairment if she stopped the substance abuse and that

24
Lockwood's "diminished capacity to handle the mental demands of work is due to her non-

25
compliance with treatment and continued substance abuse."  *Id.*  The ALJ's findings are not

26
sufficiently detailed to allow this court to understand the basis for his conclusion, and therefore are

27
inadequate.  *See Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981) ("An examiner's

28
findings should be as comprehensive and analytical as feasible and, where appropriate, should

United States District Court
Northern District of California

United States District Court
Northern District of California

include a statement of subordinate factual foundations on which the ultimate factual conclusions

are based, so that a reviewing court may know the basis for the decision . . . the court may not

speculate as to his findings" (internal citations omitted)).  To the extent the ALJ identifies any

basis for his conclusions, he appears to rely on records that correlate Lockwood's marijuana use

with adverse events in her life as well as records that correlate Lockwood feeling better with her

representations of decreased marijuana use.  *See* AR 23 ("The adverse effects of claimant's

marijuana dependence are well documented and the treatment notes show that her functioning

improved when her marijuana use decreased") (citing AR 290, 310, 312, 314, 315).  Correlation,

however, does not equal causation.

Neither the ALJ nor Defendant identified any evidence establishing that marijuana

materially contributed to Lockwood's depression, her PTSD, her bipolar disorder, her anxiety, or

any of the other diagnosed and extensively documented impairments from which she suffers.[5]  On

the contrary, the evidence establishes that Lockwood's PTSD was caused by a years of abuse, and

no treating physician has opined that this condition would improve but for Lockwood's use of

---

[5] The records Defendant cites only establish that Lockwood was using marijuana while experiencing her impairments, but do not support the ALJ's or Defendant's conclusion that the impairments are caused by marijuana use or that Lockwood's marijuana use is a material contributing factor to her disabilities.  *See* Doc. No. 22 at 2-4 (citing AR 134, 207, 215, 223, 296-299, 312).  The closest any of these documents come to establishing a link between marijuana and her disability is AR 314, where one of Lockwood's treaters opines that Lockwood's "Axis II behaviors and substance abuse are interfering in her ability to engage in services, heal, and move forward."  This does not constitute substantial evidence that marijuana use is a material contributor to Lockwood's impairments. *See also* AR 312 (decreased marijuana use would "likely help" Lockwood "function more effectively").  Lockwood's treater in March 2005 did not conclude that her bipolar disorder was caused by her use of marijuana.  *See* Doc. No. 22 at 2, citing AR 429.  As noted above, after learning that Lockwood had used methamphetamines regularly before her pregnancy, Dr. Lang noted that her mood instability "now appears more likely to correlate with the [methamphetamine] abuse," but also that "the family history is strong for bipolar disorder and the Lithium appeared to be significantly helpful with mood stability."  AR 429; *see also id*. at 431 (Dr. Lang was unable to establish manic symptoms outside of her methamphetamine use).  Thus, the only evidence in the record that Lockwood's substance abuse caused any of her impairments is her treating physician's opinion that Lockwood's methamphetamine use may have caused her bipolar symptoms.  Lockwood stopped using methamphetamines in November 2004 (AR 288), but subsequent treaters continued to diagnose her with this condition (*see supra*).  Indeed, the ALJ listed bipolar disorder as one of Lockwood's severe impairment knowing she had not used crystal meth in almost six years.  AR 19.

1    marijuana.  Lockwood was diagnosed with -- and found disabled as a result of -- PTSD when she

2    was 13 years old, and the record does not contain any evidence that she was using marijuana at

3    that time.  Her treating physician maintained his PTSD diagnosis in 2005 with full knowledge that

4    Lockwood was habitually using marijuana.  AR 432 (ruling out bipolar disorder after discovering

5    that Lockwood used methamphetamines, but reaffirming PTSD diagnosis without mentioning

6    impact of marijuana on that condition).  The ALJ's conclusion that Lockwood's marijuana use (as

7    opposed to her methamphetamine use) was a material contributor to Lockwood's PTSD diagnosis

8    (or any of her psychological conditions) is not supported by substantial evidence in the record.

9            **E.    The Record Was Not Adequately Developed.**

10               When a claimant is actively abusing drugs or alcohol, determining which limitations

11    would remain when the effects of substance abuse are absent is necessarily hypothetical; however,

12    the ALJ must still develop a full and fair record and support his conclusion with substantial

13    evidence.  *See, e.g., Outin v. Astrue*, 2011 U.S. Dist. LEXIS 87958, *15 (N.D. Cal. Aug. 9, 2011)

14    ("[E]ven though it is the claimant's burden to prove that [drug and alcohol abuse] is not a

15    contributing factor, it is the ALJ's responsibility to develop a full and fair record and, if the ALJ is

16    unable to determine whether [drug and alcohol abuse] is a contributing factor to the otherwise

17    acknowledged disability, the claimant's burden has been met and an award of benefits must

18    follow") (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003)).  "In cases of

19    mental impairments, this duty is especially important."  *DeLorme v. Sullivan*, 924 F.2d 841, 849

20    (9th Cir. 1991).  The ALJ's duty is triggered when the record is inadequate or ambiguous "to

21    allow for proper evaluation of the evidence."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir.

22    2010); see also Tonapetyan, 242 F.3d at 1148-49.

23               Lockwood argues that the ALJ failed to develop the record regarding her substance abuse.

24    Doc. No. 19 at 9-11.  Defendant counters that the record is unambiguous, and the ALJ had no duty

25    to develop the record further.  Defendant reasons that because Dr. Harrison's report did not

26    address the claimant's substance abuse, "the ALJ reasonably concluded that his opinion related to

27    Plaintiff's condition when she was not abusing marijuana" and therefore "[t]he record was

28    unambiguous on the issue of whether Plaintiff could work absent her substance abuse; the only

United States District Court
Northern District of California

United States District Court
Northern District of California

1  opinion to address the subject, Dr. Harrison's opinion, supports the ALJ's finding."[6]  Doc. No. 22

2  at 3.  The court finds that the record was ambiguous, and should have been developed further.

3          Without further citation to the record or other expert medical testimony, the ALJ concluded

4  that Lockwood's drug use was material, asserting that her "diminished capacity to handle the

5  mental demands of work is due to her non-compliance with treatment and continued substance

6  abuse."  AR 21.  The ALJ's conclusion is based on medical records and treatment notes that

7  "show that the claimant's substance abuse and the degree of her compliance with treatment

8  directly affected her level of functioning."  AR 22.  As the ALJ notes, there is some

9  documentation from Lockwood's treating sources opining that "her Axis II behaviors and

10  substance abuse are interfering with her treatment and improvement" (AR 314), and later in July

11  2009 noting that the claimant reported a decrease in her marijuana use which would "likely help

12  her function more effectively" (AR 312).  One treating source also noted that Lockwood

13  "decreased her use of marijuana and was feeling better."  AR 310.

14          The comments regarding Lockwood's improvement with decreased substance abuse,

15  however, are not unambiguous.  That Lockwood's functioning improved on a few occasions does

16  not constitute substantial evidence that Lockwood would improve sufficiently to be considered not

17  disabled if she stopped using marijuana.  *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th

18  Cir. 2001) (noting that "improvement" is contextual, and does not necessarily indicate that a

19  claimant's impairments no longer seriously affect his ability to function in the work place).

20  Furthermore, the treatment notes acknowledge that the impact of decreased marijuana use on

21  _____

22          [6] Defendant's argument is circular and is not based on evidence in the record.  Dr.
Harrison's report does not, in fact, address Lockwood's substance abuse in any way.  *See* AR 249-
23  259.  Nor does the ALJ explain the basis for his conclusion that Dr. Harrison's opinion reflects
Lockwood's impairments without marijuana.  *See* AR 21.  Moreover because the record contains
24  dozens of references to Lockwood's habitual marijuana use, it is unclear how Dr. Harrison could
have assessed Lockwood's functioning without marijuana based on the AR.  Defendant asks the
25  court to assume a similarly erroneous conclusion regarding Dr. Butler's report.  *See* Doc. No. 22 at
8.  Because Lockwood denied using marijuana when she met with Dr. Butler, Defendant
26  concludes that Dr. Butler's report "appears to be an accurate reflection of Plaintiff's functioning
when abusing marijuana."  *Id.*  By Defendant's earlier logic, however, since Dr. Butler did not
27  address Lockwood's use of marijuana (besides reporting that Lockwood represented she did not
have a substance abuse problem), the court should infer that the report reflects her impairments
28  without marijuana.  Defendant cannot have it both ways.  In any event, these open questions
illustrate why the record must be augmented.

Lockwood's mental health is intermixed with other factors, such as her level of compliance with

psychotropic medications and other positive changes in her life.  AR 312.  The materiality of

Lockwood's substance abuse as to her ability to work is not well documented.

The only clear evidence on record that compares Lockwood's ability with and without the

impact of marijuana comes from the records of her October 2007 hospitalization.  At intake, her

GAF was 30 (AR 454); upon discharge four days later, it was 50 (AR 450).  Whether the

improvement was due to her cessation of marijuana or to other factors, such as taking anti-

depressant or anti-anxiety medication (she was given Lithium, Zyprexa, Seroquel, Neurontin and

Risperdal during her short stay (AR 449)) is not established.  Similarly, whether Lockwood would

have stabilized at a GAF of 50[7] or continued to improve if she stayed sober, on this record, is mere

speculation.  Lockwood denied any problem related to substance abuse at her February 2011

examination with Dr. Butler, and he still assessed her with a GAF of 50.  AR 468, 470.  Additional

information and/or medical testimony is needed to determine the nature and severity of limitations

arising from Lockwood's mental disorders that would remain absent her substance abuse to

develop a full and fair record in support the ALJ's conclusion.  Lockwood was prejudiced by these

errors.

Here, the record was inadequate to permit the ALJ to assess (1) whether Lockwood's use

of marijuana materially contributes to her disabilities; (2) whether, absent the use of marijuana,

Lockwood's abilities would rise to a level adequate to hold down a job.  As noted above, no

treating physician ever opined that marijuana (as opposed to methamphetamines) contributed to

Lockwood's diagnosed impairments.  No examining physician so opined.  No consultative

examiner so opined.  This conclusion seems to have been reached by the ALJ alone.  Similarly,

while several providers noted that Lockwood might improve if she stopped using marijuana (AR

310, 314, 321, 448), no treating physician ever opined that the improvement would be sufficient to

allow her to work.  Nor did a vocational expert opine that Lockwood would be able to work

_____

[7] Notably, a person with a GAF of 50 still exhibits "Serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job)."  DSM-IV.

United States District Court
Northern District of California

1  regular hours, or interact with co-workers and supervisors, if she remained at the level of

2  functioning she displayed when she was discharged in 2007.  This again, seems to have been a

3  conclusion the ALJ reached on his own.  The ALJ's conclusions are not supported by substantial

4  evidence in the record.

5       **F.**    **New Evidence.**

6       Dr. Butler's report issued after the ALJ heard Lockwood's testimony and issued his

7  decision.  It corroborates other evidence in the record, including evidence relating to Lockwood's

8  numerous diagnoses, GAF score, and difficulties dealing with people.  The court need not decide

9  whether it constitutes new evidence sufficient to remand the case pursuant to 42 U.S.C. § 405(g),

10  because the court is remanding the case on other grounds.  The ALJ on remand shall take the

11  report into consideration.

12                              **CONCLUSION**

13       For the reasons stated above, the court grants Lockwood's motion for summary judgment

14  and remands the case.  On remand, the ALJ shall evaluate each of Lockwood's diagnosed

15  impairments and consider each medical opinion in the record together with the rest of the relevant

16  evidence when determining whether Lockwood is disabled.  20 C.F.R. § 416.927(b), (c). The ALJ

17  must give appropriate weight to the opinions of Lockwood's treating physicians.  The ALJ shall

18  conduct the required drug abuse analysis and evaluate the impact of Lockwood's drug use on each

19  of her severe impairments.  The ALJ shall secure any appropriate consultations and/or testimony.

20       The court denies Defendant's motion for summary judgment.

21       The clerk of the court is directed to close the case.

22

23       **IT IS SO ORDERED**.

24  Dated: May 10, 2013

25

26                            NANDOR J. VADAS
                            United States Magistrate Judge

27

28

United States District Court
Northern District of California